# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JACK HERRELL, SANDRA HERRELL, BRETT ALTERS, JOHN COSTELLO, MELISSA COSTELLO, and SUSAN SHERMAN, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| VOLKSWAGEN GROUP OF AMERICA, INC., and VOLKSWAGEN AG, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

JURISDICTION AND VENUE ........................................................3

PARTIES...........................................................................................5

   A. Plaintiffs.................................................................................5

   B. Defendants .............................................................................8

FACTUAL BACKGROUND ............................................................8

   A. Volkswagen Markets the Class Vehicles as High-Performance, Eco-Friendly, and Fuel-Efficient Diesel Vehicles. ................................................9

   B. Volkswagen Lied to Its Consumers and Deliberately Concealed the Excessive and Unlawful Levels of Pollution Emitted by Many of Its So-Called "Clean Diesel" Vehicles. .........................................13

   C. Once Caught, Volkswagen Admitted Its Fraud.............................15

   D. Volkswagen Has Reaped Considerable Profit From Its Fraud. ....................16

   E. Volkswagen Warranted That the Class Vehicles Complied with Applicable Emissions Regulations, and Promised to Fix Them if They Did Not. ................................................16

   F. Plaintiffs and Class Members Have Suffered Significant Harm as a Result of Volkswagen's Unlawful Actions. ................................18

TOLLING OF THE STATUTE OF LIMITATIONS ...........................19

   A. Fraudulent Concealment.......................................................19

   B. Estoppel ...............................................................................20

   C. Discovery Rule ....................................................................20

CLASS ACTION ALLEGATIONS ................................................20

   A. Numerosity and Ascertainability ........................................22

   B. Typicality.............................................................................22

   C. Adequate Representation .....................................................22

   D. Predominance of Common Issues .......................................23

   E. Superiority ...........................................................................24

CLAIMS FOR RELIEF ..................................................................26

PRAYER FOR RELIEF ..................................................................55

DEMAND FOR JURY TRIAL ...............................................................................58

CLASS ACTION COMPLAINT

## INTRODUCTION

1.      For over six years, Volkswagen Group of America, Inc. and Volkswagen AG (collectively, "Volkswagen") have intentionally and systematically cheated their customers, lied to the government, and misled the public about the efficacy of its four cylinder diesel-engine vehicles sold under the Volkswagen and Audi brands.  Volkswagen has marketed its so-called "Clean Diesel" vehicles as high performing, fuel efficient, and environmentally-friendly. In truth, Volkswagen's Clean Diesel vehicles are anything but clean.

2.      Instead, the Class Vehicles, defined below, emit noxious pollutants at *up to forty (40) times* the legal limit allowed under federal and state law.  In order to conceal this inconvenient truth from regulators and the public, Volkswagen installed a sophisticated software algorithm, or "defeat device," in the Class Vehicles that instructs them to cheat on emissions tests; that is, to engage full emissions controls only when undergoing official emissions testing. *At all other times, the emissions controls are de-activated*, and the vehicles emit extremely high, and illegal, levels of pollutants.  "Truth in Engineering" is Audi's official slogan.  Ironically, these Audis (and Volkswagens) were engineered to deceive.

3.      As used in this Complaint, the "Class Vehicles" refer to Volkswagen and Audi vehicles sold in the United States with four cylinder, Type EA 189 and EA 288 diesel engines, which share a common, uniform, deceitful, and harmful

CLASS ACTION COMPLAINT

design, in that they (A) emit high and illegal levels of pollutants in normal operation; (B) are equipped with a defeat device enabling them to bypass emissions regulations; and (C) cannot deliver the advertised combination of low emissions, fuel economy, and high performance for which they were marketed and advertised. The Class Vehicles include at least the following makes and model years:

- 2009 – 2015 Volkswagen Jetta

- 2009 – 2014 Volkswagen Jetta SportWagen

- 2012 – 2015 Volkswagen Beetle

- 2012 – 2015 Volkswagen Beetle Convertible

- 2010 – 2015 Volkswagen Golf

- 2015 Volkswagen Golf SportWagen

- 2012 – 2015 Volkswagen Passat

- 2010 – 2015 Audi A3

4.      Volkswagen has admitted that the defeat device was present in approximately 482,000 Class Vehicles sold in the United States, and more than 11 million vehicles worldwide.

5.      Plaintiffs Jack Herrell, Sandra Herrell, Brett Alters, John Costello, Melissa Costello, and Susan Sherman are among those who were deceived and cheated by Volkswagen and who purchased and/or leased a Class Vehicle based on

CLASS ACTION COMPLAINT

Volkswagen's misrepresentations and omissions.  They bring this action individually and on behalf of a Class of all persons similarly situated in the United States who purchased or leased a Class Vehicle, and Subclasses of Alabama, Utah, and Washington residents who purchased or leased a Class Vehicle (collectively, the "Class Members").

## JURISDICTION AND VENUE

6.     Jurisdiction arises under 28 U.S.C. § 1331 based upon the federal RICO claims pursuant to 18 U.S.C. § 1961 *et seq.* and there is supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.  Jurisdiction is also proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiffs and many members of the proposed Plaintiff Class are citizens of states different from Volkswagen's home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

7.     This Court has personal jurisdiction over Volkswagen because it conducts regular and continuous business in Michigan.

8.     Volkswagen AG is the sole owner of Volkswagen Group of America, Inc. and tightly controls the actions of its agent to perform the critical tasks of selling the Class Vehicles, including developing, manufacturing, distributing, and marketing the Class Vehicles.  The Court therefore has specific jurisdiction over

Volkswagen AG because it has purposefully availed itself of this forum by directing its agents and distributors to take action here.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

10.     Volkswagen conducts substantial business in this District.  Until approximately 2010, Volkswagen Group of America, Inc. was headquartered in Auburn Hills, Michigan.  And between 2008 and 2013, Volkswagen "invested about $12 million and added hundreds of employees at its offices in Auburn Hills."[1]

11.     Unsurprisingly, then, during the relevant time period, many of the wrongdoings giving rise to Plaintiffs' claims emanated from this District.  Of particular importance, Volkswagen's Engineering and Environmental Office— where, upon information and belief, the defeat device scheme was centralized— was located at Auburn Hills, Michigan.  Because Volkswagen maintained, and continues to maintain, critical operations in this District, on information and belief, employees in this district witnessed and/or participated in the fraudulent activities

---

[1] Mark Phelan, *Mark Phelan: Volkswagen of America in charge of 'own destiny'*, DETROIT FREE PRESS, December 1, 2013, *available at* http://archive.freep.com/article/20131201/COL14/312010056/volkswagenauburn-hills-herndon-virginia (last visited Oct. 21, 2015).

CLASS ACTION COMPLAINT

1277485.2

giving rise to Plaintiffs' claims.  Notably, when the EPA issued its Notice of

Violation, described in greater detail below, it was addressed to only two people:

David Geanacopoulos, the Executive Vice President of Public Affairs and General

Counsel, at Volkswagen's Virginia headquarters, and Stuart Johnson, the General

Manager of the Engineering and Environmental Office, at Volkswagen's Auburn

Hills center.

12.     In addition, Volkswagen has marketed, advertised, sold and leased the

Class Vehicles in this District, and has caused harm to Class Members residing in

this District.

13.     Thus, venue is proper in this District because a substantial part of the

events and omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

### A.     Plaintiffs

14.     Plaintiffs JACK HERRELL and SANDRA HERRELL are citizens

and residents of St. George, Utah.  On or about April 30, 2012, Plaintiffs Jack

Herrell and Sandra Herrell purchased a new 2012 Audi A3 TDI, VIN

WAUBJAFM6CA097061, from Hiley Cars Huntsville, LP in Huntsville, Alabama.

Plaintiff Jack Herrell and Sandra Herrell purchased this vehicle, and were willing

to pay more for the Clean Diesel model, because of the advertised combination of

low emissions, good fuel economy, and high torque and performance, and because

of the vehicle's reputation for maintaining a high resale value for a long time. Unbeknownst to Plaintiffs Jack Herrell and Sandra Herrell, at the time of acquisition, the vehicle contained a defeat device designed to bypass emissions standards and deceive consumers and regulators, and the vehicle could not deliver the advertised combination of low emissions, high performance, and fuel economy.

15.     Plaintiff BRETT ALTERS is a citizen and resident of Las Vegas, Nevada.  On or about July 18, 2015, Plaintiff Alters purchased a used 2012 Volkswagen Golf TDI, VIN WVWDM7AJ2CW350043, from Findlay Volkswagen in St. George, Utah.  Plaintiff Alters purchased this vehicle, and was willing to pay more for the Clean Diesel model, because of the advertised combination of low emissions, good fuel economy, and high torque and performance, and because of the vehicle's reputation for maintaining a high resale value for a long time.  Unbeknownst to Plaintiff Alters, at the time of acquisition, the vehicle contained a defeat device designed to bypass emissions standards and deceive consumers and regulators, and the vehicle could not deliver the advertised combination of low emissions, high performance, and fuel economy.

16.     Plaintiffs JOHN COSTELLO and MELISSA COSTELLO are citizens and residents of Mountain Home, Idaho.  In or about April 2014, Plaintiffs John Costello and Melissa Costello purchased a new 2014 Volkswagen Passat TDI, VIN 1VWCN7A30EC082847, from Cutrubus Volkswagen in Layton, Utah.  Plaintiffs

John Costello and Melissa Costello purchased this vehicle and were willing to pay more for the Clean Diesel model, because of the advertised combination of low emissions, good fuel economy, and high torque and performance, and because of the vehicle's reputation for maintaining a high resale value for a long time. Unbeknownst to Plaintiffs John Costello and Melissa Costello, at the time of acquisition, the vehicle contained a defeat device designed to bypass emissions standards and deceive consumers and regulators, and the vehicle could not deliver the advertised combination of low emissions, high performance, and fuel economy.

17.     Plaintiff SUSAN SHERMAN is a citizen and resident of Whitefish, Montana.  In or about August 2012, Plaintiff Sherman purchased a new 2012 Jetta SportWagen TDI, VIN 3VWPL7AJ4CM707638, from AutoNation Volkswagen Audi, in Spokane, Washington.  Plaintiff Sherman purchased this vehicle, and was willing to pay more for the Clean Diesel model, because of the advertised combination of low emissions, good fuel economy, and high torque and performance, and because of the vehicle's reputation for maintaining a high resale value for a long time.  Unbeknownst to Plaintiff Sherman, at the time of acquisition, the vehicle contained a defeat device designed to bypass emissions standards and deceive consumers and regulators, and the vehicle could not deliver the advertised combination of low emissions, high performance, and fuel economy.

CLASS ACTION COMPLAINT

**B.**    **Defendants**

18.    Defendant Volkswagen Group of America, Inc. is a corporation doing business in all 50 states and is organized and incorporated under the laws of New Jersey.  Its principal place of business is in Herndon, Virginia. Volkswagen is a citizen of New Jersey and Virginia. *See* 28 U.S.C. § 1332(d)(10).

19.    Defendant Volkswagen AG is the parent corporation and sole owner of Volkswagen Group of America, Inc.  Volkswagen AG is based in Germany and directly controls and directs the actions of Volkswagen Group of America, Inc., which acts as its agent in the United States.  As a result, this Court has specific jurisdiction over Volkswagen AG.

20.    At all relevant times, Volkswagen manufactured, distributed, sold, leased and warranted the Class Vehicles under the Volkswagen and Audi brand names throughout the nation.  Volkswagen designed and manufactured the Class Vehicles, and created and distributed the manuals, advertisements, and other promotional materials relating to the Class Vehicles.

## FACTUAL BACKGROUND

21.    This case arises from Volkswagen's unprecedented, and until recently successful, efforts to cheat consumers, deceive the public, and bypass federal and state regulations.

A.   **Volkswagen Markets the Class Vehicles as High-Performance, Eco-Friendly, and Fuel-Efficient Diesel Vehicles.**

22.   Diesel vehicles are generally more fuel efficient and powerful than gasoline engines.  Diesel engines, however, emit higher levels of certain pollutants as a by-product of combustion.  Diesel engine transmissions are also typically more expensive to maintain.

23.   Volkswagen attempted to address this problem with its so-called "Clean Diesel" vehicles.  In an effort to make the Class Vehicles more marketable and induce consumers to pay premium prices, Volkswagen claimed its Clean Diesel TDI (turbocharged direct injection) engines combined fuel efficiency and high performance with low emissions.  The combination of these three characteristics was the primary selling point for the Class Vehicles and was the centerpiece of Volkswagen's advertising efforts.

24.   Some advertisements, for example, specifically emphasized the low emissions and eco-friendliness of the vehicles:





 

25.    Others touted the combination of fuel efficiency and power:

1277485.2



26.     Yet others addressed the full package, implying that in contrast to the

"stinky, smoky, and sluggish" diesel vehicles of old, Volkswagen's new diesel

vehicles were clean, efficient, and powerful all at once:

CLASS ACTION COMPLAINT

## This ain't your daddy's diesel.

Stinky, smoky, and sluggish. Those old diesel realities no longer apply. Enter TDI Clean Diesel. Ultra-low-sulfur fuel, direct injection technology, and extreme efficiency. We've ushered in a new era of diesel.

- Engineered to burn low-sulfur diesel fuel
- "Common Rail" direct injection system

View key fuel efficiency info

27.     The foregoing print advertisements were distributed via the United States mail and via the internet, a means of interstate and international wire communications.

28.     Volkswagen also ran similar advertisements on television and on the Internet.  An example of a commercial touting how "clean" Volkswagen diesels is available at https://www.youtube.com/watch?v=WNS2nvkjARk (last visited September 22, 2015).  Examples of commercials touting the fuel efficiency of Volkswagen diesels are available at https://www.youtube.com/watch?v=a2CNHVXvNRo and https://www.youtube.com/watch?v=wj3if2gRWYE (last visited September 22, 2015).  An example of a commercial touting the performance of Volkswagen

diesels is available at https://www.youtube.com/watch?v=0VA51xWXZ3g (last visited September 22, 2015).

29.     Volkswagen's efforts were a resounding success, as Volkswagens and Audis became the highest-selling diesel passenger cars in the United States.

30.     Unfortunately, the "Clean Diesel" vehicles were a sham.  The truth of the manner in which these so-called "Clean Diesels" were designed and engineered was far stranger than the fiction under which Volkswagen sold them.

**B.      Volkswagen Lied to Its Consumers and Deliberately Concealed the Excessive and Unlawful Levels of Pollution Emitted by Many of Its So-Called "Clean Diesel" Vehicles.**

31.     For years, Volkswagen failed to disclose to the public and to consumers the presence of the defeat devices in the Class Vehicles and the true nature of its Class Vehicles' performance and emissions.

32.     On September 18, 2015, the Environmental Protection Agency ("EPA") slapped Volkswagen with a Notice of Violation ("NOV") of the Clean Air Act.  The NOV explains that Volkswagen secretly installed a defeat device in certain of its diesel vehicles.  As described above, the defeat device is a complex software algorithm which enables the vehicles to bypass emissions standards by engaging the emission control function only during official emissions testing and rendering it inoperative at all other times.

33.    In short, vehicles equipped with the defeat device software meet emissions standards only during testing; in normal operation they emit pollutants, including nitrogen oxides ("NOx"), at up to forty (40) times the legal limit.

34.    As noted in the EPA's official press release, NOx is dangerous:

> NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with a range of serious health effects, including increased asthma attacks and other respiratory illnesses that can be serious enough to send people to the hospital. Exposure to ozone and particulate matter have also been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory disease are particularly at risk for health effects of these pollutants.[2]

35.    Unsurprisingly, then, defeat devices are illegal.  The Clean Air Act expressly prohibits engine parts or components which "bypass, defeat, or render inoperative" the emission control system. CAA § 203 (a)(3)(B).  Volkswagen's software did just that, and in so doing, violated the Clean Air Act.

36.    Volkswagen also violated the Clean Air Act by falsely certifying to the EPA that the Class Vehicles would meet applicable federal emission standards to obtain the EPA-issued Certificate of Conformity, which is required to sell vehicles in the United States.

---

[2] *See* 2015 Press Releases, EPA, *EPA, California Notify Volkswagen of Clean Air Act Violations*, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, (September 18, 2015), http://yosemite.epa.gov/opa/admpress.nsf/21b8983ffa5d0e4685257dd4006b85e2/dfc8e33b5ab162b985257ec40057813b!OpenDocument. Plaintiffs request that the Court take judicial notice of these public admissions under Fed. R. Evid. 201.

37.     The defeat device software was designed by Robert Bosch GmbH ("Bosch"), a German company which is the world's largest manufacturer of automotive components.  Bosch sold the defeat device software and many other components to Volkswagen AG.

38.     Bosch now claims that the defeat device software was originally designed only for experimental purposes and that Bosch allegedly warned Volkswagen as early as 2007 that use of the software in actual conditions could violate applicable laws.  However, there is no legitimate purpose for the defeat device software that Bosch developed and sold to Volkswagen AG.

39.     A group of Volkswagen engineers discovered the use of the defeat device in 2011 and brought it, and the fact that the device was illegal, to the attention of company management. Volkswagen apparently ignored that report and continued their fraudulent and deceptive practices.

## C.     Once Caught, Volkswagen Admitted Its Fraud.

40.     Before resigning, Volkswagen AG's former CEO, Martin Winterkorn, acknowledged the fraud and issued an apology for having "broken the trust of our customers and the public."

41.     Similarly, Volkswagen Group of America, Inc.'s CEO, Michael Horn, conceded that Volkswagen "was dishonest with the EPA, and the California Air

CLASS ACTION COMPLAINT

Resources Board, and with all of you." He went on to admit that Volkswagen

"totally screwed up" and that it "must fix the cars."

**D.** **Volkswagen Has Reaped Considerable Profit From Its Fraud.**

42.     Volkswagen charged premiums of several thousands of dollars for the

Clean Diesel models of the Class Vehicles.  These premiums are represented in the

chart below and reflect the value consumers placed on the advertised features of

the Clean Diesel vehicles and paid to obtain, and which Volkswagen promised to

all, but delivered to no one:

| Clean Diesel Price Premium | | | |
|---|---|---|---|
| Model | Base | Mid-Level | Top-Level | Average |
| VW Jetta | $2,860.00 | $1,570.00 | $1,030.00 | $1,820.00 |
| VW SportWagen | $5,570.00 | $1,680.00 | $0.00 | $2,416.67 |
| VW Golf | $2,400.00 | $1,000.00 | $1,000.00 | $1,466.67 |
| VW Golf SportWagen | $2,950.00 | $1,000.00 | $1,000.00 | $1,650.00 |
| VW Beetle | $4,635.00 | $4,920.00 | $0.00 | $3,185.00 |
| VW Beetle Convertible | $4,080.00 | $530.00 | $700.00 | $1,770.00 |
| VW Passat | $5,755.00 | $2,845.00 | $2,135.00 | $3,578.33 |
| Audi A3 | $2,300.00 | $2,300.00 | $2,300.00 | $2,300.00 |
| Average | $3,818.75 | $1,980.63 | $1,020.63 | $2,273.33 |

43.     Had Volkswagen revealed the truth about the Class Vehicles, eco-

conscious consumers would likely have taken their business to other automobile

manufacturers.

**E.** **Volkswagen Warranted That the Class Vehicles Complied with Applicable Emissions Regulations, and Promised to Fix Them if They Did Not.**

44.     Volkswagen expressly warranted to its consumers that the Class

Vehicles were built to, and would in fact, comply with applicable emissions

CLASS ACTION COMPLAINT

standards.  For example, the Model Year 2010 California Emissions Warranties manual provides that the Class Vehicles were:

a.      "designed, built and equipped so as to conform with all applicable requirements of the California Air Resources Board ("CARB")"; and

b.      "free from defects . . . which would cause the vehicle to fail to conform with ARB [sic] requirements."

45.    In that same manual, Volkswagen promised that:

a.      "If your vehicle fails a Smog Check inspection, all necessary repairs and adjustments will be made by Volkswagen to ensure that your vehicle passes the inspection";

b.      "If any emission-related part on your vehicle is defective, the part will be repaired or replaced by Volkswagen"; and

c.      "Where a warrantable condition exists, Volkswagen will repair your vehicle at no cost to you including diagnosis, parts and labor."

46.    Volkswagen clearly broke these promises by installing a defeat device designed to bypass governmental emissions regulations, and by providing vehicles that could not comply with the emissions regulations while simultaneously delivering the advertised combination of fuel economy and performance.

CLASS ACTION COMPLAINT

### F.      **Plaintiffs and Class Members Have Suffered Significant Harm as a Result of Volkswagen's Unlawful Actions.**

47.     Volkswagen will not be able to adequately fix the vehicles.  The EPA has ordered Volkswagen to bring the Class Vehicles into compliance with the emissions standards of the Clean Air Act, but doing so will materially compromise the vehicles' performance and/or fuel efficiency.  Even if Volkswagen is able to make the Class Vehicles EPA-compliant through a retrofit, the vehicles will no longer perform as previously represented to the public and consumers, and Plaintiffs and Class Members will be deprived of the benefits Volkswagen promised and for which they bargained when they purchased or leased the Class Vehicles.

48.     As a result, the Class Vehicles do not function as reasonable consumers expect, and have lost considerable value.  As of October 6, 2015, the used-car pricing guide Kelley Blue Book estimated that the resale value of the Class Vehicles had already dropped an average of 13%, or approximately $1,700 per vehicle.  Moreover, Plaintiffs and Class Members will incur additional expenses at the pump as a result of the decreased fuel efficiency.

49.     Volkswagen failed to disclose these material facts to the public and to consumers. Had Plaintiffs and Class Members known of the defect at the time they decided to purchase or lease the Class Vehicles, they would have declined to purchase or lease the vehicles, or would have paid considerably less than they did.

50.     In sum, Volkswagen's deliberate deception has caused significant harm to Plaintiffs, Class Members, and the public.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.     Fraudulent Concealment

51.     Volkswagen concealed its fraud from the Class.  Upon information and belief, Volkswagen has known of the defeat devices installed in the Class Vehicles since at least 2009, when it began installing them, and has intentionally concealed from and/or failed to notify Plaintiffs, Class Members, and the public, of the defeat devices and the true emissions and performance of the Class Vehicles.

52.     The defeat device is a complicated software algorithm designed only to detect emissions testing conditions to selectively initiate the full emissions controls and trick the emissions test.  The defeat device could only have been installed intentionally by Volkswagen, and the only purpose of the code is to deceive regulators, consumers, and the public.

53.     Despite knowing about the defeat device and unlawful emissions, Volkswagen did not acknowledge the problem until after the EPA issued its NOV on September 18, 2015.

54.     Any applicable statute of limitation has therefore been tolled by Volkswagen's knowledge and active concealment of the facts alleged herein.

**B.** <u>**Estoppel**</u>

55.     Volkswagen was and is under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the vehicles. Instead, it actively concealed the true character, quality, and nature of the vehicles and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the vehicles.  Plaintiffs and Class Members reasonably relied upon Volkswagen's knowing and affirmative misrepresentations and/or active concealment of these facts.  Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitation in defense of this action.

**C.** <u>**Discovery Rule**</u>

56.     The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered that the Class Vehicles had the defeat devices and were not delivering the low emissions that were advertised and warranted by Volkswagen.

57.     Plaintiffs and Class Members had no realistic ability to discover the presence of the defeat devices, or to otherwise learn of the fraud, until it was discovered by the EPA and California Air Resources Board and revealed to the public on September 18, 2015.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Class,

CLASS ACTION COMPLAINT

pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and/or (b)(1), (b)(2),

and/or c(4).  This action satisfies the numerosity, commonality, typicality,

adequacy, predominance, and superiority requirements of those provisions.

59.    The proposed classes are defined as:

**Nationwide Class**

All persons or entities in the United States that purchased
or leased a Class Vehicle, as defined herein.

**Alabama Subclass**

All Persons or entities in Alabama that purchased or
leased a Class Vehicle, as defined herein.

**Utah Subclass**

All Persons or entities in Utah that purchased or leased a
Class Vehicle, as defined herein.

**Washington Subclass**

All Persons or entities in Washington that purchased or
leased a Class Vehicle, as defined herein.

60.    Excluded from the Nationwide Class, the Alabama Subclass, the Utah

Subclass, and the Washington Subclass (the "Classes") are: (A) Volkswagen, any

entity or division in which Volkswagen has a controlling interest, and their legal

representatives, officers, directors, assigns, and successors; (B) the Judge to whom

this case is assigned and the Judge's staff; (C) governmental entities; and (D) those

persons who have suffered personal injuries as a result of the facts alleged herein.

Plaintiffs reserve the right to amend the Class definitions if discovery and further

investigation reveal that any Class should be expanded, divided into additional

subclasses, or modified in any other way.

### A.    <u>Numerosity and Ascertainability</u>

61.    Although the exact number of Class Members is uncertain, the size of the Classes can be estimated with reasonable precision, and the number is great enough that joinder is impracticable.  To date, approximately 482,000 vehicles identified as Class Vehicles have been sold in the United States.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  Class Members are readily identifiable from information and records in Volkswagen's possession, custody, or control, and/or from state vehicle registration records.

### B.    <u>Typicality</u>

62.    The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Volkswagen. The representative Plaintiffs, like all Class Members, have been damaged by Volkswagen's misconduct in that they have incurred losses relating to the Class Vehicles.  Furthermore, the factual bases of Volkswagen's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

### C.    <u>Adequate Representation</u>

63.    Plaintiffs are members of the Classes and will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel

CLASS ACTION COMPLAINT

with substantial experience in prosecuting consumer class actions, including actions involving defective products generally, and defective automobile parts specifically.

64.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

### D.     <u>Predominance of Common Issues</u>

65.     There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members.  The answers to these common questions will advance resolution of the litigation as to all Class Members. These common legal and factual issues include:

a.     whether the Class Vehicles contained a defeat device and emitted unlawful levels of pollutants under normal operation;

b.     whether Volkswagen knew or should have known about the defeat device and emission levels in the Class Vehicles;

c.     whether the true nature of the Class Vehicles' performance, emissions levels, fuel economy, and the inclusion of the defeat device constitute material facts that reasonable consumers would have considered in deciding whether to purchase a Class Vehicle;

CLASS ACTION COMPLAINT

1277485.2

d.      whether Volkswagen made material misrepresentations regarding the Class Vehicles;

e.      whether Volkswagen had a duty to disclose the true nature of the Class Vehicles to Plaintiffs and Class Members;

f.      whether Volkswagen omitted and failed to disclose material facts about the Class Vehicles;

g.      whether Volkswagen's concealment of the true nature of the Class Vehicles would have induced a reasonable consumer to act to their detriment by purchasing and/or leasing the Class Vehicles;

h.      whether Plaintiffs and Class Members are entitled to a declaratory judgment; and,

i.      whether Plaintiffs and Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction.

## E.      **Superiority**

66.      Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Volkswagen's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

67.      Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective

remedy at law.  Because the damages or other financial detriment suffered by Plaintiffs and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, it is likely that only a few Class Members could afford to seek legal redress for Volkswagen's misconduct.  Absent a class action, Class Members will continue to incur damages, and Volkswagen's misconduct will continue without remedy.

68.     Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

69.     Volkswagen has acted in a uniform manner with respect to the Plaintiffs and Class Members.

70.     Classwide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Volkswagen has acted on grounds that apply generally to the class, and inconsistent adjudications with respect to Volkswagen's liability would establish incompatible standards and substantially impair or impede the ability of Class Members to protect their interests.  Classwide relief assures fair, consistent, and equitable treatment and protection of all Class

Members, and uniformity and consistency in Volkswagen's discharge of their duties to perform corrective action regarding the Class Vehicles.

## CLAIMS FOR RELIEF

### COUNT I
### Common Law Fraud
### (Brought on Behalf of the Nationwide Class)

71.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

72.     Plaintiffs bring this claim on behalf of the Nationwide Class.

73.     Volkswagen engaged in both speaking and silent fraud, and in fraudulent and deceptive conduct, throughout the class period.  As described above, Volkswagen's conduct defrauded Plaintiffs and Class Members, intending and leading them to believe, through affirmative misrepresentations, omissions, suppression and concealments of material fact, that the Class Vehicles, marketed by Volkswagen as "Clean Diesel" vehicles, possessed important characteristics that they in fact did not possess—namely the combination of low emissions, high performance, and fuel economy—and inducing their purchases.

74.     Volkswagen's intentional and material misrepresentations included, among other things, its advertising, marketing materials and messages, and other standardized statements claiming the Class Vehicles (a) were clean and eco-

friendly and (b) combined low emissions with high performance and strong fuel economy.

75.     The foregoing misrepresentations were uniform across all Class Members.  The same advertisements were shown to all members of the public generally and the same marketing materials were distributed to customers and potential customers, and all of the materials contained the same standardized general statements relating to the Class Vehicles' environmental friendliness, performance and fuel economy.

76.     These representations directly contradicted the true nature and hidden design of the Class Vehicles and their actual emissions when operating under normal circumstances. Volkswagen knew the representations were false when it made them, and intended to defraud purchasers thereby.

77.     Volkswagen also had a duty to disclose, rather than conceal and suppress, the full scope and extent of the emissions deception because:

        a.     Volkswagen had exclusive knowledge of the actual emissions in the Class Vehicles and concealment thereof;

        b.     the details regarding the actual emissions in the Class Vehicles and concealment thereof were known and/or accessible only to Volkswagen;

c.    Volkswagen knew Plaintiffs and Class Members did not know and could not reasonably discover the actual emissions in the Class Vehicles and concealment thereof; and

d.    Volkswagen made general representations about the qualities of the Class Vehicles, including statements about their performance, fuel economy, and emissions, which were misleading, deceptive and incomplete without the disclosure of the fact that Volkswagen secretly designed and installed defeat device software on the Class Vehicles that was intended to conceal the vehicles' exceedingly high and illegal emission levels from governments, consumers, and the public.

78.    Volkswagen's concealment was likewise uniform across all Class Members in that Volkswagen concealed from everyone other than itself, including potential customers and regulators, the true facts relating to the emission levels of the Class Vehicles.

79.    Volkswagen's misrepresentations and omissions were material in that they would affect a reasonable consumer's decision to purchase or lease a Class Vehicle.  Consumers paid a premium for the Clean Diesel Class Vehicles precisely because they supposedly offered low emissions and fuel economy without sacrificing performance.  Volkswagen's conduct, misrepresentations, omissions, concealment, and suppression, undermined the core value proposition that induced

CLASS ACTION COMPLAINT

consumers to purchase or lease the Class Vehicles, and directly affect both the quality and worth of the vehicles.

80.     Volkswagen's intentionally deceptive conduct—its silent fraud and fraud by concealment—likewise induced the Class Vehicles' purchase by Plaintiffs and Class Members, and the resulting harm and damage to them.

81.     Plaintiffs relied upon Volkswagen's misrepresentations and concealment of the true facts.  Class Members are presumed to have relied upon Volkswagen's misrepresentations and concealment of the true facts because those facts are material to a reasonable consumer's purchase the Class Vehicles.

82.     As a result of Volkswagen's inducements, Plaintiffs and Class Members have sustained significant damage, including, but not limited to, lost vehicle value and diminished vehicle quality and utility.  If Plaintiffs and Class Members had known about the defeat device and the unlawful emissions at the time of acquisition, they would not have acquired the Class Vehicles.  Indeed, the Class Vehicles could not have been marketed or sold to any reasonable consumer had existence of the defeat device been disclosed.  Volkswagen is therefore liable to Plaintiffs and Class Members in an amount to be proven at trial.

83.     Volkswagen intentionally designed and engineered its "Clean Diesel" vehicles to deceive and cheat regulators and its customers.  Volkswagen touted the performance and environmental virtues of these vehicles, while concealing and

suppressing the truth about them, for the purpose of inducing Plaintiffs and the

Class to buy them.  Volkswagen's fraud caused both the purchase and the harm.  In

order to undo this harm, Volkswagen must repair or remediate the vehicles so that

they deliver everything it promised when it sold them, or undertake to buy them

back from Class Members on terms that are just and equitable under principles of

rescission, restitution, and benefit of the bargain.

84.    Volkswagen's conduct was systematic, repetitious, knowing,

intentional, and malicious, and demonstrated a lack of care and reckless disregard

for the rights and interests of Plaintiffs, the public, and the environment.

Volkswagen's conduct thus warrants an assessment of punitive damages,

consistent with the actual harm it has caused, the reprehensibility of its conduct,

and the need to punish and deter such conduct.

## COUNT II
### Unjust Enrichment
### (Brought on Behalf of the Nationwide Class)

85.    Plaintiffs hereby incorporate by reference the allegations contained in

the preceding paragraphs of this Complaint.

86.    Plaintiffs bring this claim on behalf of the Nationwide Class.

87.    Volkswagen has been unjustly enriched in that it intentionally sold the

Class Vehicles with defeat devices which were intended to mask the fact that the

Class Vehicles did not comply with applicable automobile exhaust regulations and

could not deliver the combination of low emissions, high performance, and fuel economy promised to consumers.

88.     Plaintiffs and Class Members conferred a benefit on Volkswagen by purchasing, and paying a premium for, the Class Vehicles.

89.     When purchasing their vehicles, Plaintiffs and Class Members reasonably believed that the Class Vehicles complied with applicable environmental regulations and, if properly tested in accordance with EPA mileage standards, would achieve the mileage stated on the window sticker of the vehicles. They also believed that the Class Vehicles would perform as advertised and warranted.

90.     Plaintiffs and Class Members got less than what they paid for in that the Class Vehicles did not comply with applicable environmental regulations, nor was the EPA mileage stated on the sticker usable for comparison purposes for other vehicles.  Moreover, the Class Vehicles did not deliver the promised combination of low emissions, high performance, and fuel economy that Plaintiffs and Class Members bargained for.

91.     Volkswagen knows of and appreciates the benefit conferred by Plaintiffs and Class Members and has retained that benefit notwithstanding its knowledge that the benefit is unjust.

92.     The foregoing did not occur by happenstance or conditions out of Volkswagen's control.  In fact, the Class Vehicles were deliberately designed to comply with environmental regulations only when being tested and were known and intended by Volkswagen to not comply with applicable regulations under ordinary driving conditions.

93.     Volkswagen should therefore be required to disgorge the unjust enrichment

## COUNT III
## Breach of Express Warranty
### (Brought on Behalf of the Nationwide Class)

94.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

95.     Plaintiffs bring this claim on behalf of the Nationwide Class.

96.     By advertising the "green" and "clean" qualities of its diesel engines, Volkswagen expressly warranted to Plaintiffs and Class Members that the vehicles at least complied with all applicable laws and regulations relating to exhaust emissions, as it would be impossible for an automobile to be "green" if it emitted more pollutants than were allowed by applicable environmental laws and regulations.

97.     Moreover, by advertising the low emissions in combination with statements regarding the performance, torque, and fuel efficiency, Volkswagen

CLASS ACTION COMPLAINT

warranted to purchasers of the Class Vehicles that the vehicles would exhibit this combination of characteristics. Such statements became the basis of the bargain for Plaintiff and other Class Members because such statements are among the facts a reasonable consumer would consider material in the purchase of a vehicle.

98.     In fact, in ordinary driving conditions, the Class Vehicles did not comply with applicable environmental regulations, and instead emitted between ten (10) and forty (40) times the amount of pollutants allowed during normal operation. As such, it was unlawful for Volkswagen to sell the vehicles to the public.

99.     In addition, Volkswagen stated that the vehicles achieved certain fuel economy when tested in accordance with applicable EPA regulations. Those statements created an express warranty that the vehicle achieved the stated fuel efficiency, allowing consumers to make apples-to-apples comparisons with other vehicles.

100.    Testing under EPA regulations presupposes that the vehicles comply with all laws and regulations applicable to automobiles, including environmental regulations.

101.    In fact, had the Class Vehicles been tested in accordance with EPA fuel efficiency standards while also complying with pollution regulations, they

CLASS ACTION COMPLAINT

would have achieved significantly lower fuel efficiency than was stated on the EPA mileage sticker on the vehicle.

102.   In addition, the Class Vehicles are not adequately labeled because they misstate that the Class Vehicles comply with EPA regulations, and the stated gas mileage for comparison purposes was not achieved by testing in accordance with EPA testing procedures.

103.   As a result of the foregoing breaches of express warranty, Plaintiffs and other Class Members have been damaged in that they purchased vehicles that were unlawfully sold, did not comply with government regulations, did not perform as promised, and were less valuable than what they paid for.

## COUNT IV
### Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, *et seq.* – Implied Warranty
### (Brought on Behalf of the Nationwide Class)

104.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

105.   Plaintiffs bring this claim on behalf of the Nationwide Class.

106.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

107.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3), because they are persons

entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

108.   Volkswagen is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

109.   Section 2310(d)(1) of Chapter 15 of the United States Code provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

110.   Volkswagen provided Plaintiffs and the other Class Members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Volkswagen warranted that the Class Vehicles would pass without objection in the trade as designed, manufactured, and marketed, and were adequately labeled.

111.   Volkswagen breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1).

112.   Any efforts to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

113.   Plaintiffs and the other Class Members have had sufficient direct dealings with either Volkswagen or its agents (dealerships) to establish privity of contract.

114.   Nonetheless, privity is not required here because Plaintiffs and other Class Members are intended third-party beneficiaries of contracts between Volkswagen and its dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers.

115.   Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Volkswagen notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

116.   Plaintiffs' individual claims place into controversy an amount equal to or exceeding $25.  The amount in controversy of this entire action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiffs, individually and on behalf of the other Class Members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class Members are entitled to recover

a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class Members in connection with the commencement and prosecution of this action.

117.    Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1).

**COUNT V**
**Violation of 18 U.S.C. § 1962(c), The Racketeer Influenced And Corrupt Organizations Act ("RICO")) (Brought on Behalf of the Nationwide Class)**

118.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

119.    Plaintiffs bring this claim on behalf of the Nationwide Class.

120.    Plaintiffs and Class Members are "person[s] injured in his or her business or property" by reason of Volkswagen's violation of RICO within the meaning of 18 U.S.C. § 1964(c).

121.    Volkswagen Group of America, Inc., Volkswagen AG, and Bosch are all "persons" under 18 U.S.C. § 1961(3).

122.    Volkswagen Group of America, Inc., Volkswagen AG, and Bosch violated 18 U.S.C. § 1962(c) by participating in or conducting the affairs of the Clean Diesel RICO Enterprise through a pattern of repeatedly defrauding consumers.  The methodology of the fraud is set forth above and is described in

this Count.  The persons participating in the Clean Diesel RICO Enterprise and their respective roles in the Enterprise are set forth below.

123.   For purposes of this Count, Volkswagen Group of America, Inc., Volkswagen AG, and Bosch undertook a fraudulent scheme to sell the Class Vehicles through the use of false and misleading statements and omissions relating to the environmental and performance qualities of the Class Vehicles through the use of the U.S. mails, and interstate and international wire, radio and television transmissions.

124.   At all relevant times and as described above, Volkswagen Group of America, Inc., Volkswagen AG, and Bosch carried out their scheme to defraud Plaintiffs and other Class Members in connection with the conduct of an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

125.   The Enterprise consisted of the following persons, and others presently unknown, who constitute an "association-in-fact enterprise" within the meaning of RICO and who collectively constitute the "Clean Diesel RICO Enterprise" or "Enterprise":

  a.   Volkswagen Group of America, Inc.;

  b.   Volkswagen AG; and

  c.   Bosch

126.   The Clean Diesel RICO Enterprise, whose activities affected interstate and foreign commerce, is an association in fact of individuals and corporate entities within the meaning of 18 U.S.C. § 1961(4) and consists of persons associated together for the common purpose of selling the Class Vehicles that the members of the Clean Diesel RICO Enterprise knew did not actually comply with U.S. environmental laws, were not "green," and could not deliver the performance and fuel efficiency promised by Volkswagen if the Class Vehicles had complied with U.S. environmental laws.

127.   Volkswagen Group of America, Inc., Volkswagen AG, and Bosch, and their respective officers and employees together developed the Class Vehicles with the defeat device,    and Volkswagen Group of America, Inc. and Volkswagen AG developed the false, misleading and/or deceptive advertisements for them, as described above.

128.   The Clean Diesel RICO Enterprise was formed in or about 2009 and continues to the present.

129.   The Clean Diesel RICO Enterprise was separate and distinct from the pattern of racketeering activity.  The Enterprise was an ongoing organization or group and existed to advance the interests of the individual entities that comprise its membership, i.e., selling the Class Vehicles described above.  The Clean Diesel RICO Enterprise members all served the common purpose of selling as many Class

CLASS ACTION COMPLAINT

Vehicles as possible, therein maximizing their own profits and revenues and sharing the bounty derived from deceived and defrauded consumers. Each member of the Clean Diesel RICO Enterprise benefited from the common purpose: Volkswagen Group of America, Inc. and Volkswagen AG sold more Class Vehicles, and received more for those than they otherwise would have, had the Class Vehicles been truthfully advertised, marketed and labeled; because Volkswagen Group of America, Inc. and Volkswagen AG sold more Class Vehicles, Bosch sold more components to go into the Class Vehicles, thus earning more profits than it would have otherwise.

130.   The Clean Diesel RICO Enterprise also exists for the legitimate purpose of manufacturing and selling automobiles.  It operates within a framework that includes the sale of other automobiles that are not infected with fraud.  Each member of the Enterprise performs a role in the group consistent with its structure that furthers the activities of the Clean Diesel RICO Enterprise in connection with the Enterprise members' sale of Class Vehicles to consumers.

131.   Alternatively, the Enterprise was formed solely for the purpose of carrying out the pattern of racketeering acts described herein.

132.   Through the conduct of the Enterprise, Volkswagen Group of America, Inc., Volkswagen AG, and Bosch undertook a fraudulent scheme to sell

the Class Vehicles based upon the false and misleading misrepresentations and omissions set forth herein.

133.   Through this scheme, Volkswagen Group of America, Inc., Volkswagen AG, and Bosch, and others agreed to utilize the false and misleading representations and omissions relating to the Class Vehicles in a conscious and deliberate effort to sell Vehicles products at a premium price that, in fact, the Class Vehicles were not "green", and could not achieve the advertised performance and fuel efficiency had they complied with applicable environmental laws. Alternatively, the Class Vehicles sold through the Clean Diesel RICO Enterprise had significantly less value than consumers paid for them because they were illegal to sell in the first instance and now have significantly lower resale value as a result of the fraud becoming public.

134.   In furtherance of the scheme, Volkswagen Group of America, Inc. and Volkswagen AG engaged in thousands of acts of mail fraud and wire fraud, each of which constitute "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1).

135.   Those acts of mail fraud and wire fraud include generally distributing the false and misleading marketing materials described herein via mail, television, radio, and the Internet to members of the public as well as communicating among themselves with respect to the scheme via interstate and international email and

telephone with the common purpose of selling the Class Vehicles to an unsuspecting public based upon the fraudulent and deceptive representations and omissions described above.

136.   In addition to the foregoing, each download or view of one of advertisements and videos on the Internet constituted a separate offense of wire fraud.

137.   As a direct result of the foregoing violations of 18 U.S.C. § 1962(d), Plaintiffs and the Class Members have been injured in their business and/or property in multiple ways, including that they paid for Class Vehicles which did not, and could not, provide the benefits promised in the advertisements and other promotional materials associated with the Vehicles and incurred resulting out-of-pocket losses.

138.   But for the predicate acts described above—Volkswagen Group of America, Inc. and Volkswagen AG's numerous false and misleading statements (and marketing and advertising containing omissions) sent via the U.S. mail and interstate wires—Plaintiffs and Class Members would not have paid as high a price for the Class Vehicles as they did, or would not have purchased the Class Vehicles at all.

139.   The RICO violations described herein have directly and proximately caused injuries and damages to Plaintiffs and Class Members, and Plaintiffs and

Class Members are entitled to bring this action for three times their actual

damages, as well as injunctive and/or equitable relief and costs and reasonable

attorneys' fees pursuant to 18 U.S.C. §§ 1964(a) and 1964(c).

### COUNT VI
### Violation of the Alabama Deceptive Trade Practices Act
### Ala. Code § 9-19-1, *et seq.*
### (Brought on Behalf of the Alabama Subclass)

140.   Plaintiffs Jack Herrell and Sandra Herrell (referred to as "Plaintiffs" in

this section) hereby incorporate by reference the allegations contained in the

preceding paragraphs of this Complaint.

141.   Plaintiffs bring this claim on behalf of the Alabama Subclass.

142.   Plaintiffs and the Alabama Subclass Members are "consumers" within

the meaning of Ala. Code § 8-19-3(2).

143.   Plaintiffs, the Alabama Subclass Members, and Volkswagen are

"persons" within the meaning of Ala. Code § 8-19-3(5).

144.   The Class Vehicles are "goods" within the meaning of Ala. Code. § 8-

19-3(3).

145.   Volkswagen has, and continues to, engage in "trade or commerce"

within the meaning of Ala. Code § 8-19-3(8).

146.   Plaintiffs intend to assert a claim under the Alabama Deceptive Trade

Practices Act ("Alabama DTPA") which proscribes: "(5) Representing that goods

or services have sponsorship, approval, characteristics, ingredients, uses, benefits,

or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5. Plaintiffs will make a demand in satisfaction of Ala. Code § 8-19- 10(e), and may amend this Complaint to assert claims under the DTPA once the required 15 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the DTPA.

### COUNT VII
### Violation of the Utah Consumer Sales Practices Act
### Utah Code Ann. § 13-11-1, *et seq.*
### (Brought on Behalf of the Utah Subclass)

147.    Plaintiffs Brett Alters, John Costello, and Melissa Costello (referred to as "Plaintiffs" in this section) hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

148.    Plaintiffs bring this claim on behalf of the Utah Subclass.

149.    Volkswagen is a "supplier" under the Utah Consumer Sales Practices Act ("Utah CSPA"), Utah Code Ann. § 13-11-3.

150.    Plaintiffs and the Utah Subclass Members are "persons" under Utah Code Ann. § 13-11-3.

151.   The sale of the Class Vehicles to Plaintiffs and the Utah Subclass Members was a "consumer transaction" within the meaning of Utah Code Ann. § 13-11-3.

152.   The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under Utah Code Ann. § 13-11- 4.  Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." Utah Code Ann. § 13-11-4.  "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code Ann. § 13-11-5.

153.   Volkswagen committed deceptive acts or practices in connection with a consumer transaction, by, among other things, engaging in unconscionable acts; representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; and representing that the Class Vehicles are of a particular standard, quality, and grade when they are not.

154.   In the course of its business, Volkswagen installed the defeat device in the Class Vehicles to cheat on emissions testing, concealed that its Clean Diesel

systems failed EPA regulations, and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, and/or suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Class Vehicles.

155. Volkswagen has known of its use of the defeat device and the true nature of its Clean Diesel engine system for at least six years, but concealed all of that information until recently.

156. Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations. Volkswagen concealed this information as well.

157. In the course of Volkswagen's business, Volkswagen willfully failed to disclose and actively concealed the use of the defeat device, and true cleanliness and efficiency of the Clean Diesel engine system in the Class Vehicles. Volkswagen compounded the deception by repeatedly asserting that the Class Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

In doing so, Volkswagen engaged in deceptive business practices in violation of the Utah CSPA.

158.   Volkswagen's unfair or deceptive acts or practices were likely to, and did in fact deceive reasonable consumers, including Plaintiffs, about the true environmental cleanliness and fuel efficiency of the Clean Diesel engine system, the quality of the Volkswagen brand, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Class Vehicles.

159.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Class Vehicles with an intent to mislead Plaintiffs and the Utah Subclass.

160.   Volkswagen knew or should have known that its conduct violated the Utah CSPA.

161.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency, and/or reliability of the Class Vehicles and the Volkswagen and Audi brands that were either false or misleading.

162.   Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Class Vehicles, and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

        a.      possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was

manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

      b.    intentionally concealed the foregoing from Plaintiffs and the Utah Subclass; and/or

      c.    made incomplete representations about the safety, cleanliness, efficiency and reliability of the Class Vehicles generally, and the use of the defeat device and true nature of the Clean Diesel engine system in particular, while purposefully withholding material facts from Plaintiffs and the Utah Subclass that contradicted these representations.

163.   Because Volkswagen fraudulently concealed the defeat device and the true cleanliness and performance of the Clean Diesel engine system, resulting in a raft of negative publicity once the use of the defeat device and true characteristics of the Clean Diesel engine system finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, the Class Vehicles are now worth significantly less than what they otherwise would be.

164.   Volkswagen's fraudulent use of the defeat device and its concealment of the true characteristics of the Clean Diesel engine system were material to Plaintiffs and the Utah Subclass.  A vehicle made by a reputable manufacturer of environmentally-friendly vehicles is worth more than an otherwise comparable

CLASS ACTION COMPLAINT

vehicle made by a disreputable and dishonest vehicle manufacturer that conceals the amount of pollutions that its cars emit.

165.   Plaintiffs and the Utah Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased the Class Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

166.   Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Utah CSPA.  All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices that occurred in the course of Volkswagen's business.

167.   Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public.  Volkswagen's unlawful acts and practices complained of herein affect the public interest.

168.   As a direct and proximate result of Volkswagen's violations of the Utah CSPA, Plaintiffs and the Utah Subclass have suffered injury-in-fact and/or actual damage.

169.   Pursuant to Utah Code Ann. § 13-11-4, Plaintiffs and the Utah Subclass seek monetary relief against Volkswagen measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in

the amount of $2,000 for each Plaintiff and each member of the Utah Subclass,

reasonable attorneys' fees, and any other just and proper relief available under the

Utah CSPA.

## COUNT VIII
### Violation of the Washington Consumer Sales Practices Act
### Wash. Rev. Code Ann. §§ 19.86.010, *et seq.*
### (Brought on Behalf of the Washington Subclass)

170.   Plaintiff Susan Sherman (referred to as "Plaintiff" in this section)

hereby incorporates by reference the allegations contained in the preceding

paragraphs of this Complaint.

171.   Plaintiff brings this claim on behalf of the Washington Subclass.

172.   Volkswagen, Plaintiff, and the Washington Subclass Members are

"persons" under Wash. Rev. Code Ann. § 19.86.010(1) (the "Washington CPA").

173.   Volkswagen has, and continues, to engage in "trade" or "commerce"

under Wash. Rev. Code Ann. § 19.86.010(2).

174.   In the course of its business, Volkswagen installed the defeat device in

the Class Vehicles to cheat on emissions testing, concealed that its Clean Diesel

systems failed EPA regulations, and otherwise engaged in activities with a

tendency or capacity to deceive. Volkswagen also engaged in unlawful trade

practices by employing deception, deceptive acts or practices, fraud,

misrepresentations, or concealment, and/or suppression or omission of any material

fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Class Vehicles.

175.   Volkswagen has known of its use of the defeat device and the true nature of its Clean Diesel engine system for at least six years, but concealed all of that information until recently.

176.   Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations.  Volkswagen concealed this information as well.

177.   In the course of Volkswagen's business, Volkswagen willfully failed to disclose and actively concealed the use of the defeat device, and true cleanliness and efficiency of the Clean Diesel engine system in the Class Vehicles. Volkswagen compounded the deception by repeatedly asserting that the Class Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road. In doing so, Volkswagen engaged in deceptive business practices in violation of the Washington CPA.

178.   Volkswagen's unfair or deceptive acts or practices were likely to, and did in fact deceive reasonable consumers, including Plaintiff, about the true

CLASS ACTION COMPLAINT

environmental cleanliness and fuel efficiency of the Clean Diesel engine system, the quality of the Volkswagen brand, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Class Vehicles.

179. Volkswagen intentionally and knowingly misrepresented material facts regarding the Class Vehicles with an intent to mislead Plaintiff and the Washington Subclass.

180. Volkswagen knew or should have known that its conduct violated the Washington CPA.

181. As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Class Vehicles and the Volkswagen and Audi brands that were either false or misleading.

182. Volkswagen owed Plaintiff and the Washington Subclass a duty to disclose the true safety, cleanliness, efficiency, and reliability of the Class Vehicles, and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

a. possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

b.      intentionally concealed the foregoing from Plaintiff and the Washington Subclass; and/or

c.      made incomplete representations about the safety, cleanliness, efficiency and reliability of the Class Vehicles generally, and the use of the defeat device and true nature of the Clean Diesel engine system in particular, while purposefully withholding material facts from Plaintiff and the Washington Subclass that contradicted these representations.

183.   Because Volkswagen fraudulently concealed the defeat device and the true cleanliness and performance of the Clean Diesel engine system, resulting in a raft of negative publicity once the use of the defeat device and true characteristics of the Clean Diesel engine system finally began to be disclosed, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than what they otherwise would be.

184.   Volkswagen's fraudulent use of the defeat device and its concealment of the true characteristics of the Clean Diesel engine system were material to Plaintiff and the Washington Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer that conceals the amount of pollutions that its cars emit.

185.   Plaintiff and the Washington Subclass suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.  Plaintiff and members of the Washington Subclass who purchased the Class Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

186.   Volkswagen's actions constituted a generalized course of deception that impacts the public interest because Plaintiff and the Washington Subclass members were injured in exactly the same way as hundreds of thousands of other consumers purchasing and/or leasing Volkswagen vehicles, and the failure to follow the practices pertaining to motor vehicle warranties in Wash. Rev. Code § 19.118 is recognized by statute as matters vitally affecting the public interest.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Volkswagen's business and has the potential for repetition.

187.   As a direct and proximate result of Volkswagen's violations of the Washington CPA, Plaintiff and the Washington Subclass have suffered injury-in-fact and/or actual damage.

188.   Volkswagen's actions as set forth above induced Plaintiff and the Washington Subclass to purchase their Class Vehicles from Volkswagen and/or pay a higher price for their Class Vehicles than they otherwise would have.

CLASS ACTION COMPLAINT

189.   Plaintiff and the Washington Subclass were injured as a result of Volkswagen's conduct.  Due to Volkswagen's deceptive or unfair conduct, Plaintiff and the Washington Subclass overpaid for their Class Vehicles and did not receive the benefit of their bargain. Their vehicles have also suffered a diminution in value.

190.   Pursuant to Wash. Rev. Code § 19.86.095, Plaintiff will serve the Washington Attorney General with a copy of this complaint as Plaintiff and the Washington Subclass seek injunctive relief.

191.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Washington Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, attorneys' fees, costs, treble damages, and other damages allowed by law.

## **<u>PRAYER FOR RELIEF</u>**

Plaintiffs, individually and on behalf of all others similarly situated, request the Court to enter judgment against Volkswagen, as follows:

A.     an order certifying the proposed Nationwide Class, designating Plaintiffs as the named representatives of the Nationwide Class, and designating the undersigned as Class Counsel;

B.     an order certifying the proposed Alabama Subclass, designating

Plaintiffs Jack Herrell and Sandra Herrell as the named representatives of the Alabama Subclass, and designating the undersigned as Class Counsel;

C.     an order certifying the proposed Utah Subclass, designating Plaintiffs Brett Alters, John Costello, and Melissa Costello as the named representatives of the Utah Subclass, and designating the undersigned as Class Counsel;

D.     an order certifying the proposed Washington Subclass, designating Plaintiff Susan Sherman as the named representative of the Washington Subclass, and designating the undersigned as Class Counsel;

E.     a declaration that Volkswagen is financially responsible for notifying all Class Members about the true nature of the Class Vehicles;

F.     an order enjoining Volkswagen to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and directing Volkswagen to permanently, expeditiously, and completely repair the Class Vehicles;

G.     an order compelling specific performance of Volkswagen's guarantee to fix the Class Vehicles at no cost to Class Members;

H.     an order compelling Volkswagen to buy back and replace the Class Vehicles on fair and equitable terms;

I.      an award to Plaintiffs and Class Members of compensatory, exemplary, punitive, and statutory penalties and damages, including interest, in an amount to be proven at trial;

J.      an award to Plaintiffs and Class Members for the return of the purchase prices of the Class Vehicles, with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale, for damages, and for reasonable attorney fees;

K.      a declaration that Volkswagen must disgorge, for the benefit of Plaintiffs and Class Members, all or part of the ill-gotten profits received from the sale or lease of the Class Vehicles, and make full restitution to Plaintiffs and Class Members;

L.      all necessary and appropriate preliminary and final injunctive and equitable relief available under law or equity, and class certification to effectuate and enforce such relief in an inclusive and consistent manner;

M.      an award of treble damages pursuant to 18 U.S.C. §§ 1964(a) and 1964(c);

N.      an award of attorneys' fees and costs, as allowed by law;

O.      an award of pre-judgment and post-judgment interest, as provided by

law;

     P.     leave to amend this Complaint to conform to the evidence produced at trial; and

     Q.     such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: October 21, 2015        Respectfully submitted,

                     **KELLER ROHRBACK L.L.P.**

                     By:    */s/ Tana Lin*
                           Tana Lin

                     Lynn Lincoln Sarko
                     *lsarko@kellerrohrback.com*
                     Amy Williams-Derry
                     *awilliams-derry@kellerrohrback.com*
                     Tana Lin (Bar No. P63125)
                     *tlin@kellerrohrback.com*
                     Gretchen Freeman Cappio
                     *gcappio@kellerrohrback.com*
                     KELLER ROHRBACK L.L.P.
                     1201 Third Avenue, Suite 3200
                     Seattle, WA 98101-3052
                     Telephone: (206) 623-1900
                     Facsimile: (206) 623-3384

Elizabeth J. Cabraser
*ecabraser@lchb.com*
Phong-Chau Nguyen
*pgnguyen@lchb.com*
Kevin R. Budner
*kbudner@lchb.com*
Robert L. Lieff, Of Counsel
*rlieff@lchb.com*
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

David S. Stellings
*dstellings@lchb.com*
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

*Attorneys for Plaintiffs*

1277485.2